*Fairfield,*
June, 1843.

Sanford
*v.*
Dick.

---

## WHITE *against* REED.

In *assumpsit* upon a letter of guaranty, it is not necessary to aver specially notice to the defendant of the plaintiff's acceptance; as the promise alleged implies such notice, where the law requires it.

Where the plaintiff in such action, for the purpose of proving notice to the defendant of the plaintiff's acceptance of the guaranty and of the sales made under it, offered the declarations of the defendant, that he knew of the existence of the guaranty; that he asked why the claim had not been presented to the commissioners on his estate; and that in the conversation, he made no objection that notice had not been given him, but said, if the claim was not outlawed, and it was a continuing guaranty, he would pay it; it was held, that such declarations were admissible.

Where the defendant introduced the testimony of a witness to certain facts, which he claimed to be material to his defence, and then asked the court to charge the jury, that if they should find the testimony of this witness to be true, the plaintiff could not recover; it was held, that as this was an attempt *to change the issue from the truth of the facts in controversy to the credibility of the witness,* the court might properly refuse to give such charge, irrespective of the relevancy or sufficiency of the facts to establish the defence.

Where the defendant gave the plaintiff a writing in these words: "For any sum that my son *G.* may become indebted to you, not exceeding 200 dollars, I will hold myself accountable;" it was held, that the terms of this instrument

HARVARD LAW LIBRARY

*Fairfield,*
*June,* 1843.

White
*v.*
Reed.

were satisfied, when any one indebtedness, within the amount limited, was incurred by *G.*, and consequently, that it was not a continuing guaranty.

*It seems,* that a guaranty will not be construed as a continuing one, unless its language clearly indicates, that such was the intention of the parties.

THIS was an action of *assumpsit.* The declaration alleged, that the defendant, on the 15th of *August,* 1833, in consideration that the plaintiff would, at the special instance and request of the defendant, give credit to the defendant's son, *George Reed,* and allow him to become indebted to the plaintiff, undertook and faithfully promised the plaintiff, that he would hold himself accountable to the plaintiff for any sum that his said son *George Reed* might become indebted to the plaintiff, not exceeding 200 dollars ; that the plaintiff, confiding in the said undertaking and promise of the defendant, did afterwards, from time to time, until the 9th of *January,* 1837, sell and deliver to the said *George Reed,* on credit, certain goods, which he, the said *George Reed,* bought of the plaintiff, at certain reasonable prices, amounting in the whole to the sum of 200 dollars, for which said *George Reed* became indebted to the plaintiff in that amount ; that though said credit has long since elapsed, and the time for the payment of said goods, by said *George Reed,* to the plaintiff, has long since expired, yet the said *George Reed* has not, though often requested so to do, paid said sum of 200 dollars, or any part thereof ; of all which the defendant, afterwards, on the day and year last aforesaid, had notice. A breach was then alleged, in the usual form.

The cause was tried, at *Danbury, September* term, 1842, before *Waite,* J.

The plaintiff, in support of his declaration, introduced in evidence the following writing, signed by the defendant : "To *Wm. Aug. White*—Sir, for any sum that my son *George Reed* may become indebted to you, not exceeding 200 dollars, I will hold myself accountable.

*Norwalk, August* 18th, 1833. [Signed.] *Thomas Reed.*"

The plaintiff claimed, that he accepted the proposition contained in this instrument, and relying thereon, sold to *George Reed,* on credit, from time to time, between the date of the instrument and *January,* 1837, divers goods, amounting to 663 dollars, for which there was a balance of more than 200 dollars still due to the plaintiff. The plaintiff also claimed, that within a reasonable time, he gave the defendant due no-

tice of his acceptance of the guaranty, and of the sales made to *George Reed* under it. The defendant denied, that he had ever received any such notice. To prove such notice, the plaintiff offered a witness, who testified, that about two or three years after the guaranty was given, the plaintiff showed it to the witness, and made some enquiries of him respecting the circumstances of the defendant; that the witness afterwards spoke to the defendant about the guaranty, and the account of the plaintiff against *George Reed*, and described the guaranty to him; that the defendant said, he would see *George* about it, and hoped he would pay it, adding, that it was a just and honest debt; and that the defendant appeared to know of the existence of the guaranty. This witness also testified, that in 1841, three or four days before the suit was commenced, the claim of the plaintiff having been sent to him for collection, he sent for the defendant, and showed him the guaranty, and the plaintiff's account against his son, and requested payment to the amount of 200 dollars; that the defendant looked at the guaranty, asked why it had not been presented to his commissioners, said he knew it ought to be paid, asked for a copy, which was given him, and then said, he would like counsel, and if it was not outlawed, and was not barred by reason of the plaintiff's not having presented it to the commissioners on his estate, and was a continuing guaranty, he would pay it; and that the witness did not see him again until after this suit was brought. He further stated, that in this conversation, he told the defendant, that he had understood from the plaintiff, that the defendant had sent a guaranty of some sort to the plaintiff, which was not satisfactory to the plaintiff; and that, therefore, the plaintiff drew the one in question, to be signed and returned; and that the defendant signed and returned it to the plaintiff. To the admission of this testimony, for the purpose for which it was introduced, the defendant objected, claiming that the fact of such notice must be proved, by distinct evidence, and different from that offered by the plaintiff. But the court overruled the objection, and admitted the evidence.

The plaintiff, to show the indebtedness of *George Reed*, read in evidence his account with him, accompanied with evidence to prove its correctness; and it was not denied, by the defendant, that the account contained a true statement from

HARVARD LAW LIBRARY

*Fairfield,*
June, 1843.

White
*v.*
Reed.

the books of the plaintiff, of the advancements made by him, and the payments made by *George Reed*. From the account it appeared, that the payments made by *George Reed* were sufficient to cancel his first indebtedness to the plaintiff, to a greater amount than 200 dollars. There was no evidence that *George Reed* ever gave any directions as to the application of the payments ; or that the plaintiff made any other application, than by merely crediting on his book the sums paid. The defendant claimed, that the contract contained in the writing was not a continuing guaranty, and that, by reason thereof, the defendant was not accountable to the plaintiff, for any debt, except that which first accrued after the acceptance of the guaranty ; and that the payments were by law to be so applied as to cancel *George Reed's* first indebtedness to the plaintiff, to the amount specified in the guaranty ; that consequently, the plaintiff could not recover ; and the defendant prayed the court so to instruct the jury. This the court did not do.

The defendant called *George Reed*, as a witness, who testified, that in *April*, 1838, when he delivered the plaintiff three notes for 266 dollars, he asked the plaintiff, if he did not consider him sufficiently responsible, and would not give up the guaranty ; to which the plaintiff replied, that he did ; that he then looked for the guaranty, and said he could not find it, but would give it to the witness, the next time he came to *New-York ;* that a few weeks afterwards, the witness again called upon the plaintiff for the guaranty, and the plaintiff said to the witness, that he had not found it, but would look it up and destroy it, and the witness need give himself no further trouble about it ; but that this conversation was not communicated to his father. The correctness of the statement was denied, by the plaintiff, and he offered testimony to shew, that at a period some time subsequent to that when *George Reed* claimed to have had the conversation with the plaintiff, he spoke of the guaranty as an existing indebtedness—said it should be paid in full—and proposed to pay 75 cents on the dollar for the balance of his indebtedness. Upon this testimony, the defendant claimed, that if the jury should find it to be true, the plaintiff could not recover : that it appeared from the account in evidence, that the plaintiff had received enough from *George Reed* to cancel all his indebtedness prior to the

time of his conversation with the plaintiff; that such payments ought to be so applied; and that the plaintiff could not recover for any advancement subsequently made by him. And the defendant prayed the court so to instruct the jury. But this instruction was not given.

The jury returned a verdict for the plaintiff, for the sum of 200 dollars. The defendant thereupon moved in arrest of judgment, for the insufficiency of the declaration, and for a new trial, for a misdirection. These motions were reserved for the consideration and advice of this court.

*Hawley* and *Butler*, in support of the motion, contended, 1. That the declaration was insufficient. It contains no averment but the general one, that after the acceptance, the continued advancements of four years, the expiration of the credit and the call on *George Reed* and his refusal to pay, notice was given. This is insufficient. 2 *Saund. Pl. & Ev.* 515. 1 *Id.* 158. 161. *Griffin* v. *Pratt* & al. 3 *Conn. R.* 513. 515. *Thomas* v. *Davis*, 14 *Pick.* 353. Nor is the defect cured by verdict. *Rushton* v. *Aspinall*, *Doug.* 679. *Gaylord* v. *Payne* & al. 4 *Conn. R.* 190. *Russell* v. *Slade* & al. 12 *Conn. R.* 455.

2. That the evidence to prove notice, was not admissible. There must be notice of an *acceptance*, as well as of advancement. *Beekman* v. *Hale*, 17 *Johns. R.* 134. 138. *Craft* & al. v. *Isham*, 13 *Conn. R.* 28. *Chitt. Cont.* 529. (late ed.)

3. That the court should have charged the jury in relation to the testimony of *George Reed*, as the defendant claimed. This testimony was offered to show an abandonment of the guaranty; that the subsequent sales were made on the sole credit of *George Reed*, and not at all on the credit of the defendant. It is of no importance that this was not communicated to the defendant—it is enough that the sales were not on his credit.

4. That the guaranty in question is not a continuing one, but it contemplates a single indebtedness of 200 dollars. Upon any rule of construction this must be so understood. It is single in its terms, and not confined to any particular business, but may be applied to any imaginable transaction creating an indebtedness. Its language shows that continu-

HARVARD LAW LIBRARY

*Fairfield,*
June, 1843.

White
v.
Reed.

ance was not contemplated.  *Melville* & al. v. *Hayden,* 3 *B.
& Ald.* 593. (5 *E. C. L.* 389.)    *Kay* v. *Groves,* 6 *Bing.* 276.
(19 *E. C. L.* 82.)    *Aldricks* v. *Higgins,* 16 *Serg. & Rawle*
212.    *Hall* v. *Rand,* 9 *Conn. R.* 560.    *Rogers* v. *Warner,* 8
*Johns. R.* 119.    *Whitney* & al. v. *Groot,* 24 *Wend.* 82.    But
this is a claim against a *surety,* which is *strictissimi juris.*    A
contract of this sort will not be held a continuing guaranty,
unless it is made so, by unequivocal language ; and in every
doubtful case, the construction ought to be in favour of the
guarantor.    2 *Saund. Pl. & Ev.* 602.    *Bacon* v. *Chesney,* 1
*Stark. Ca.* 192.    *Evans* v. *Whyle,* 5 *Bing.* 485. (15 *E. C. L.*
514.)    *Dobbin* & al. v. *Bradley,* 17 *Wend.* 422. 425.    *Cremer*
v. *Higginson* 1 *Mason* 323.

*Bissell* and *Merwin,* contra, contended, 1. That the declaration was sufficient.   The objection is, that special notice of
the acceptance of the guaranty and a special request, were
not alleged.   A more particular averment was unnecessary ;
first, because the guaranty was not a conditional, but an absolute one.   1 *Chitt. Pl.* 287, 8. and n.    *Boot* & al. v. *Bentley,*
3 *Johns. Rep.* 208.    1 *Sw. Dig.* 697, 8, 9.    *Goshen* v. *Stonington,* 4 *Conn. R.* 209.    2 *Saund. Pl. & Ev.* 546. and cases cited *ibid.*    *Clarke* & al. v. *Burdett,* 2 *Hall* 197.    Secondly, becasue the acceptance was contemporaneous with the
guaranty.    *Wildes* & al. v. *Savage,* 1 *Sto. R.* 22.    *Clark* &
al. v. *Burdett,* 2 *Hall* 197.    But thirdly, if a more particular
averment was necessary, the defect is cured by verdict.
*Spencer* v. *Overton,* 1 *Day* 183.    1 *Chitt. Plead.* 290. and n.
*Leffingwell* & al. v. *Pierpont* & al. 1 *Johns. Ca.* 99.    2
*Conn. R.* 675. per *Gould,* J.    *Colt* v. *Root,* 17 *Mass. R.*
229. 235.    *Gould's Pl.* 492.

2. That the testimony objected to, was properly admitted.
In the first place, it conduced to prove the point in issue ;
not only a notice given, by the witness, but an admission, by
the defendant, of a previous notice.    The objection goes
rather to the sufficiency than the admissibility of the evidence.
3 *Stark. Ev.* 398.    Secondly, it was proper to show a waiver
of notice.    2 *Saund. Pl. & Ev.* 553.    2 *Swanst.* 185. 192.

3. That a new trial will not be granted, for the omission
of the judge to charge the jury, as requested by the defendant, regarding the testimony of *George Reed.*    If the plain-

tiff ever promised to give up the guaranty, there was no consideration for that promise, and it is void. *Chitt. Cont.* 6. 12. But this fact is contradicted, by *George Reed's* own admissions to the plaintiff's witness, and was never communicated to the defendant. If the guaranty is a continuing one, it disposes of the rest of the objection.

4. That the guaranty is a continuing one. 2 *Saund. Pl. & Ev.* 552. *Merle* v. *Wells,* 2 *Campb.* 413.—identical with this case. *Mason* v. *Pritchard,* 2 *Campb.* 436. S. C. 12 *East,* 227. *Clark* & al. v. *Burdett,* 2 *Hall* 197. *Rapelye* v. *Bailey,* 5 *Conn. R.* 149. *Bastow* v. *Bennett,* 3 *Campb.* 220. This last case is decisive.

HINMAN, J. Several questions are made by the defendant, in this case, which it is proper to dispose of, before coming to the one upon which the case must turn; notwithstanding the zeal with which the others have been urged.

1. Upon the motion in arrest for the insufficiency of the declaration, we entertain no doubt that the declaration is good, and would be sustained upon demurrer; for though, as a general rule, a guarantor, especially a party giving a letter of guaranty, is entitled to notice of its acceptance, yet, this is far from being a universal rule, applicable to all cases; there are many exceptions to it.

An acknowledgment of the guarantor of his liability, and a promise on his part to pay the debt, would doubtless be sufficient evidence of notice, if it did not supersede the necessity of giving it. And, in the case of a guaranty of a preëxisting debt, where the guaranty appears upon the evidence of the debt itself, no judge or lawyer ever supposed it necessary, for the holder of the security, to notify the guarantor, that he accepted the guaranty. So, where the guaranty and the acceptance of it are simultaneous, and parts of the same transaction, no subsequent notice of acceptance is necessary, but the acceptance is implied from the transaction itself. *New-Haven County Bank* v. *Mitchell,* 15 *Conn. R.* 206. For any thing which can be known from this declaration merely, this may be one of that class of cases.

But admitting this to be a case, where notice of acceptance is necessary to be proved, we think it unnecessary to make any more formal allegation of it, than is made in this declara-

HARVARD LAW LIBRARY

*Fairfield,*
*June, 1843.*

White
*v.*
Reed.

tion. This is entirely unlike that class of cases, where, by the terms or nature of the contract, one is bound to pay money, or perform some act, upon request, or upon notice, and such previous request or notice forms a condition precedent, and is, therefore, a traversable fact ; which must be specially alleged, and may, for the same reason, be specially traversed. In this class of cases, there was, originally, a valid contract, but a contract upon condition ; and therefore it is, that the party who seeks performance of it, must show, in his pleadings, that the condition has been complied with, in order to show, that the liability has attached. But, in the case of mercantile guaranties, the object of requiring notice of acceptance, is not for the purpose of performing a condition, upon which a previous contract is to become obligatory ; but for the purpose of perfecting the contract itself. It shows that the minds of the parties have met, and that the contract is complete. It is, therefore, unnecessary to allege any other notice of the acceptance of such a guaranty, than what is always necessary in declaring upon any contract. The parties, in this case, could not contract, until the guaranty was accepted, and notice of acceptance was brought home to the defendant. And it then stood upon the footing of any other contract ; and when it is alleged, that the defendant promised, it is, of course, necessarily implied, that he made a valid promise ;—in other words, a promise which the plaintiff had accepted, and the defendant had knowledge of such acceptance. If any authority is necessary, in support of this doctrine, it is to be found, by reference to the established precedents, which are in conformity to the declaration in this case.

2. The plaintiff, in order to show that he gave the defendant notice of the acceptance of the guaranty, and of the sales made to *George Reed* under it, offered in evidence two conversations of the defendant ; one of them, some two or three years after the guaranty was given, when the account of the plaintiff against *George* was spoken of ; the guaranty described ; and the defendant said, " he would see *George* about it—hoped he would pay it ;" said " it was an honest and just debt ;" and appeared to know of the existence of the guaranty. The other conversation was just previous to the commencement of the suit ; and the guaranty and the account were then shown to the defendant, and payment of the account de-

*Fairfield,*
June, 1843.

White
*v.*
Reed.

manded ; and the defendant, after looking at the guaranty, asked why it had not been presented to his commissioners, and among other things, said, he knew it ought to be paid ; took a copy, and said he would take counsel ; and if it was not outlawed, and was not barred, by reason of its not having been presented to the commissioners on his estate, and was a continuing guaranty, he would pay it.

Now, as to the sufficiency of this evidence, to prove the facts for which it was offered, the defendant had the benefit of his objection before the jury. We have nothing to do with *that.* The only question here, is, as to its admissibility. Did it tend to prove the facts for which it was offered ? But can there be a doubt upon this question ? The defendant knew of the existence of the guaranty ; asked why the claim had not been presented to the commissioners on his estate ; made no objection that notice had not been given him, but said, if the claim was not outlawed, and it was a continuing guaranty, he would pay it. Unless we are to go the length of disregarding all evidence, arising from the declarations of parties, short of a direct acknowledgment of all the facts claimed on the other side, this must be considered as tending to show notice of the acceptance of the guaranty, as well as notice of the sales made to *George Reed* under it.

3. There was conflicting evidence upon the question, whether the plaintiff had not abandoned the guaranty, and sold and delivered a portion of the goods, upon the credit of *George Reed* alone. The charge of the judge upon this point, is not objected to, but the defendant claimed, that his witness, *George Reed*, swore the whole length of his claim, upon this question ; and he asked the court to charge the jury, that if they found his testimony to be true, the plaintiff could not recover. This the court, very properly, we think, refused to do.

It is not difficult to conceive of many cases, in which it would be convenient for a party to change the issue from the truth of the facts in controversy, to the honesty or dishonesty of a particular witness. And considering the reluctance with which triers come to a verdict of guilty, where a criminal charge is the direct issue to be tried, we are not disposed to countenance an attempt to divert the minds of the jury from

HARVARD LAW LIBRARY

*Fairfield,*
June, 1843.

White
*v.*
Reed.

the facts in issue, to the honesty of the parties, or their witnesses, however closely connected the two questions may be.

4. But the great question in the case, arises upon the guaranty itself. And, though we are not entirely free from difficulty upon this question, yet, we are inclined to think, this must be construed not to be a continuing guaranty.

There are, certainly, cases bearing a strong analogy to this, in which the guaranties have been held to be continuing. And again, there are as strong cases as this, where they have been held not to be continuing. And, in the decision of cases of this sort, there has not, at all times, been perfect unanimity in the courts. The difficulty seems to have arisen more from the adoption of different and conflicting rules of construction, than from any inherent difficulty there is in construing the contracts themselves, when the principles which are to guide in their construction, are once settled. Hence, in *Merle* v. *Wells*, 2 *Campb.* 413. and in *Mason* v. *Pritchard,* 12 *East,* 227. the courts seem to have applied the principle of construing the contracts most strongly against the persons making them ; and, therefore, held, in those cases, that the guaranties should be considered continuing, unless they unequivocally appeared to be of a contrary character.

The case of *Bastow* v. *Bennett,* 3 *Campb.* 220., which has been pressed upon us, as decisive of this case, like most of the cases cited by the counsel for the plaintiff, was decided upon the authority of *Mason* v. *Pritchard* and *Merle* v. *Wells ;* and, of course, must have been governed by the same principle. But, in *Melville* v. *Hayden,* 3 *B. & Ald.* 593. (5 *E. C. L.* 389.) the court adopted a different principle. In this case, the court construed the contract most favourably for the maker of it. *Best,* J., says, " it ought to appear *unequivocally,* that it was the intention of the defendant to guaranty *Moulden's* payments for goods, to be furnished from time to time ;" and hence, in this case, the guaranty was held not to be continuing.

In *Cremer* v. *Higginson,* 1 *Mason* 323. Judge *Story* says, that in every doubtful case, the presumption ought to be, against holding a guaranty to be continuing.

An extended review of all the cases upon this subject, is not, at this time, intended ; nor is it necessary, as a reference to our own reports will show the work to have been already

done. See *Hall* v. *Rand,* 8 *Conn. R.* 560. *Rapelye* v. *Bailey,* 5 *Conn. R.* 149. *Lewis* v. *Dwight,* 10 *Conn. R.* 95.

*Fairfield,*
June, 1843.

White
*v.*
Reed.

Enough has been said, to justify the remark of Ch. J. *Tindal,* in *Hargreave* v. *Smee,* 6 *Bing.* 244. (19 *E. C. L.* 69.) that they run so nearly into each other, that it is difficult to reconcile them; and though the result to which we have come, may not necessarily impugn the authority of any of the cases; yet, as their usefulness principally depends upon the principles laid down in them; and, as in some of them, the courts have gone very far in construing guaranties to be continuing, in the absence of language which clearly imports that to have been the intention of the parties; we have thought it safe to recur to such principles of construction, as have been adopted by our own courts; and in conformity with them, give a construction to the language of this contract, without resorting to the rules of either a strict or a liberal construction of it.

The rule of construing the words most strongly against the promissor, is a rule of rigour, intended to defeat studied ambiguity, the last to be resorted to, and never to be applied, except where other rules of construction fail. 1 *Chitt. Cont.* 97. Again, while on the one hand, this is the contract of a surety, and might, therefore, entitle him to a favourable construction; yet, on the other hand, mercantile guaranties are seldom drawn up, with the caution and precision attending the execution of other contracts; but in language often unskilfully arranged, and generally, so brief, as necessarily to leave their meaning to be ascertained by inference. To apply to them, therefore, the strict rules of construction applicable to more solemn instruments, seems to be impracticable.

The true principle of sound ethics, says Chancellor *Kent,* is, to give the contract the sense in which the persons making the promise, believed the other party to have accepted it. 2 *Kent's Com.* 557.

In *Lewis* v. *Dwight,* 10 *Conn. R.* 100. the Ch. J. says, " no strained construction is to be adopted, to subject sureties; but the contract of a surety must, like all contracts, be construed according to the intent; and the question is, what is the fair import of the language of the guaranty." The supreme court of the *United States,* also, lay down a similar principle, in *Dick* v. *Lee,* 10 *Pet.* 493., in which it is said, the

*Fairfield,*
June, 1843.

White
*v.*
Reed.

construction is to be "according to what is fairly to be presumed to have been the understanding of the parties, without any strict technical nicety."

Now, the words used in this contract, clearly, do not, of necessity, import that it was to remain a standing and continuing guaranty, for all sums which *George Reed* might, from *time to time,* become indebted to the plaintiff. The words are, "any sum,"—not sums;—which seems to imply a single transaction. The words are evidently satisfied, when any one indebtedness is incurred; nor is there any thing, in the nature of the contract, nor in the language used, from which we are able to infer, that any continued dealings were contemplated. Had there been any thing, in the words used, showing that the object of the guarantor, was, to aid his son *George,* in any business which he was about to establish, or was carrying on, and to give him a standing or continuing credit in that business, the case might have been analogous to the case of *Rapelye* v. *Bailey,* 5 *Conn. R.* 142. Indeed, most of the cases cited by the plaintiff's counsel, were of that character; and, in this respect, therefore, entirely differ from the case under consideration. *Mason* v. *Pritchard,* 12 *East,* 227. *Merle* v. *Wells,* 2 *Campb.* 413. *Hargreave* v. *Smee,* 6 *Bing.* 244. (19 *E. C. L.* 69.)

Upon the whole, we think no case can be found, upon the authority of which we are compelled to construe this a continuing guaranty. And if such was the intention of the parties, they have not used language sufficiently clear, to indicate it.

We, therefore, upon this point, come to the conclusion, that a new trial must be granted.

In this opinion the other Judges concurred.

New trial to be granted.